UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| MARVIN LEO WILSON, JR., | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | 4:23-CV-31-JEM |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 10]. Now before the Court is Plaintiff's Brief in Support of a Social Security Appeal [Doc. 11]. Marvin Leo Wilson, Jr. ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the Court will **DENY** Plaintiff's statement of errors [Doc. 11] and will **AFFIRM** the decision of the Commissioner.

### I. PROCEDURAL HISTORY

On March 26, 2020, Plaintiff filed for Disability Insurance Benefits [Tr. 199] pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Plaintiff claimed a period of disability that began on October 20, 2019 [*Id.*]. After his claim was denied initially [*id.* at 68] and upon reconsideration [*id.* at 80], Plaintiff requested a hearing before an ALJ [*id.* at 89]. A hearing was held on August 10, 2022, before ALJ John Case (hereinafter "ALJ Case" or "the ALJ") [*Id.* at 32–51]. On September 28, 2022, ALJ Case found Plaintiff not disabled [*Id.* at 14–27]. Plaintiff asked

the Appeals Council to review the ALJ's decision [*Id.* at 7]. The Appeals Council denied Plaintiff's request for review [*Id.* at 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on August 18, 2023, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is now ripe for adjudication [Docs. 11, 17, 18].

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since October 20, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; osteoarthritis/degenerative joint disease or other joint disorder; and subretinal neovascularization, left eye (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

3

Case 4:23-cv-00031-JEM   Document 19   Filed 09/12/24   Page 3 of 16   PageID #: 631

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can stand/walk a total of four hours in and eight-hour workday; occasionally climb ladders/ropes/scaffolds, stoop, and crawl; frequently climb ramps/stairs, balance, kneel, and crawl; and perform no overhead work or jobs requiring depth perception; and he has to avoid extreme cold, vibration; non-hazardous.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 8, 1973, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 20, 2019, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 19–27].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

IV. ANALYSIS

Plaintiff raises one issue on appeal: that the ALJ failed to account for the "total limiting effects" of his severe impairments "in crafting an accurate RFC" [Doc. 11 pp. 1, 3]. In that regard, Plaintiff argues that (1) the record showed that Plaintiff is disabled and the ALJ failed to address his need to lie down and/or alternate positions frequently [*id.* at 8–10]; (2) the ALJ improperly reviewed the medical opinions of Dr. James Roth ("Dr. Roth") and Dr. Stephen Goewey ("Dr. Goewey") [*id.* at 12–16]; and (3) the ALJ improperly considered Plaintiff's subjective complaints [*id.* at 16–18]. The Commissioner responds that the ALJ properly crafted Plaintiff's physical RFC by (1) supporting his decision with the medical findings of Dr. Carolyn Parrish ("Dr. Parrish") [Doc. 17 pp. 3–4]; (2) considering Dr. Goewey's and Dr. Roth's opinions [*id.* at 4–7]; and (3) analyzing other factors to evaluate the consistency of Plaintiff's physical complaints [*id.* at 7–9].

A. RFC Assessment

Plaintiff argues that the record supported finding him disabled; that managing his pain would require him to be off task or miss work, precluding full-time employment; and that the ALJ

6

Case 4:23-cv-00031-JEM  Document 19  Filed 09/12/24  Page 6 of 16  PageID #: 634

failed to address Plaintiff's need to lie down and/or change position frequently in his RFC assessment [Doc. 11 pp. 8–10]. The RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Light work "requires a person to be on their feet for 2.67-5.33 hours in a day, while lifting and carrying up to 10 pounds in that time." *Elias v. Comm'r of Soc. Sec.*, No. 17-14033, 2019 WL 1415489, at *7 (E.D. Mich. Jan. 26, 2019) (citing SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983)), *report and recommendation adopted*, No. CV 17-14033, 2019 WL 1399944 (E.D. Mich. Mar. 28, 2019); *see also* 20 C.F.R. § 220.132 (defining light work as work requiring "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds").

The ALJ opined the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can stand/walk a total of four hours in and eight-hour workday; occasionally climb ladders/ropes/scaffolds, stoop, and crawl; frequently climb ramps/stairs, balance, kneel, and crawl; and perform no overhead work or jobs requiring depth perception; and he has to avoid extreme cold, vibration; non-hazardous.

[Tr. 20]. The ALJ's RFC determination was supported by substantial evidence, including the medical opinions of Drs. Goewey and Parrish. As discussed below, Dr. Goewey found Plaintiff could stand/walk for three to four hours and engage in limited squatting, bending, and kneeling [*Id.* at 494; *see supra* Section IV.B.2.]. ALJ Chase adopted this portion of Dr. Goewey's opinion and incorporated it into his RFC assessment [*Id.* at 25]. The remainder of the RFC was supported generally by Dr. Parrish's opinion, finding Plaintiff capable of light work [*Id.* at 62–63]. Specifically, Dr. Parrish found Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday [*Id.* at 62]. She also limited Plaintiff to occasionally

7

climbing ladders, ropes, scaffolds; stooping; and crawling but found he could frequently climb ramps and stairs, balance, kneel, and crouch [*Id.* at 63].

The ALJ found Dr. Parrish's opinion only partially persuasive because he "[was] persuaded by Dr. Goewey's finding that [Plaintiff] could stand/walk for three to four hours a day" [*Id.* at 25]. This is consistent with the ALJ's RFC determination limiting Plaintiff to light work, which "requires a person to be on their feet for 2.67–5.33 hours in a day . . . ." *Elias*, 2019 WL 1415489, at *7 (citing SSR 83-10, 1983 WL 31251, at *5); *see also* 20 C.F.R. § 220.132 (defining light work). The portion of Dr. Parrish's opinion that the ALJ found persuasive supports the RFC.

Plaintiff also argues that Dr. Parrish is not qualified to opine on Plaintiff's RFC because she is an ophthalmologist, not a general physician or one who specializes in pain management [Doc. 18 pp. 1–2].[1] But a medical professional's specialty is just one of the factors that an ALJ may, but does not have to, consider when weighing medical opinions. *See* 20 C.F.R. § 404.1520c(c)(4) ("The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty."). In addition, Dr. Parrish is a state agency medical consultant trained in the Social Security regulations and qualified to provide a medical opinion in this case. *See Marshall v. Comm'r of Soc. Sec.*, No. 1:13-CV-483, 2015 WL 404377, at *14 (W.D. Mich. Jan. 29, 2015) ("Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are

---

[1] Plaintiff does not challenge the substance of Dr. Parrish's findings nor the ALJ's analysis thereof.

8

'experts in Social Security disability evaluation.'" (quoting *Cobb v. Comm'r*, No. 1:12-cv-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013), and 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i))); *see also Brooks v. Comm'r*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." (omission in original)). Accordingly, the ALJ properly relied on Dr. Parrish's medical opinion in formulating the RFC.

Further, Plaintiff argues that the ALJ "did not include any off-task time or absenteeism limitations in the RFC despite the ample evidence in the record supporting the extent of his pain after 29 spinal procedures" nor accommodated his need to lie down frequently throughout the day [Doc. 11 pp. 6, 9]. The Court notes that Plaintiff does not cite to any evidence in the record that found Plaintiff requires off-task time or absenteeism but plainly asserts that the record infers that these limitations are required to accommodate Plaintiff's pain [*Id.* at 9]. *See Ray v. Saul*, No. 1:19-CV-01880, 2020 WL 5203493, at *9 (N.D. Ohio Sept. 1, 2020) ("Plaintiff's brief, however, does not point to any medical opinions interpreting those objective findings as corresponding to functional limitations greater in severity than those contained in the RFC."). "Such an argument fails to demonstrate the need for a remand." *Id.* Additionally, while Dr. Roth found that Plaintiff would need to change position and/or lie down frequently, ALJ Case was not required to adopt this limitation. As addressed below, the ALJ found Dr. Roth's opinion unpersuasive and explained his decision accordingly [*See* Tr. 24]. *See supra* Section IV.B.1.

Thus, the Court finds that the ALJ's RFC was supported by substantial evidence.

B.     **Medical Opinions**

Plaintiff argues that the ALJ improperly considered Drs. Roth's and Goewey's medical opinions which, he asserts, were supported by their own examination findings and consistent with the record [Doc. 11 pp. 12–16]. The Commissioner contends that the ALJ considered the medical opinions according to the regulations [Doc. 17 pp. 4–7].

The ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c). Of these five factors, "[t]he most important . . . are supportability and consistency." *Id.* § 404.1520c(a), (b)(2). The supportability factor means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regulations define consistency as "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

1.     **Dr. James Roth**

Plaintiff argues that the ALJ improperly considered Dr. Roth's opinion because he substituted his own lay conjecture for that of Dr. Roth, whose opinion was supported by his own assessment as well as other evidence [Doc. 11 pp. 12–14]. The Commissioner responds that the

10

ALJ analyzed Dr. Roth's opinion for supportability and consistency and properly compared his opinion to the rest of the record [Doc. 17 pp. 5–6].

Plaintiff presented to Dr. Roth for pain management about once a month between October 2019 and July 2020 [Tr. 23]. Dr. Roth opined that Plaintiff cannot lift anything over five to ten pounds, will have to adjust positions frequently, limit standing to thirty minutes, and will need to lay down frequently [*Id.* at 409–12]. His examination notes indicate that Plaintiff had limited range of motion in his back, with normal strength and reflexes in all extremities [*Id.* at 430].

The ALJ found Dr. Roth's assessment unpersuasive "as it is overly restrictive" [*Id.* at 24]. ALJ Case noted that while Dr. Roth's records showed Plaintiff "had limited range of motion in his back," he did not have a deformity and "he had normal strength, range of motion, and reflexes in all extremities with sensation intact to light touch" [*Id.* (citing Exh. 6F)]. This explanation pertains to the factor of supportability and was an accurate recitation from Dr. Roth's report, not the ALJ's own lay conjecture.[2] Plaintiff maintains that "limited [range of motion] in his lower extremities would not be an expected finding" based on his allegation of back and neck pain with radicular pain to his legs [Doc. 11 p. 13]. "[R]ather, as the ALJ himself identified, one would expect to find 'significantly decreased' back and neck [range of motion]" [*Id.*]. Plaintiff contends that ALJ

---

[2] The ALJ also notes that Dr. Roth discharged Plaintiff for noncompliance which the ALJ suggested "some medication-seeking behavior" [Tr. 24]. Plaintiff states that Dr. Roth discharged Plaintiff for not taking the prescribed medication and that Dr. Roth did not use the term "medication-seeking behavior" [Doc. 11 pp. 12–13]. Yet, in July 2020 Dr. Roth's examination notes indicate Plaintiff had two abnormal drug screens [Tr. 432], specifically, on June 20, 2020, Dr. Roth wrote "negative prescribed oxycodone and + hydrocodone not prescribed" [*Id.* at 427]. Further, Plaintiff's urinalysis test results state that he is "non-compliant" [*Id.* at 416, 418]. Accordingly, the Court finds that "[t]he record . . . reasonably support[s] the conclusion by the ALJ that [Plaintiff] exhibited some 'medication seeking behavior[,]'" *Moss v. Astrue*, No. 1:10-CV-054, 2011 WL 1517988, at *13 (D.N.H. Apr. 21, 2011); *see also Halleran v. Colvin*, No. 8:15-CV-850, 2016 WL 4501121, at *5 (M.D. Fla. Aug. 29, 2016) (discussing "[p]laintiff's apparent drug-seeking behavior" including that plaintiff's "urine drug screen was 'abnormal,' in that it revealed 'no oxycodone'").

11

Chase's finding regarding Plaintiff's limited range of motion was a "substitute of his lay conjecture on the medical data before him" [*Id.* at 12]. But Dr. Roth's examination notes plainly state that Plaintiff had a limited range of motion in his back with a normal range of motion in all extremities [Tr. 430]. Therefore, the ALJ did not "substitute[] his knowledge for that of a physician or medical expert [nor] interpret[] raw medical data." *Fowler v. Comm'r of Soc. Sec. Admin* No. 1:21-CV-01708, 2022 WL 3648436, at *13 (N.D. Ohio Aug. 9, 2022) (citation omitted), *report and recommendation adopted*, No. 1:21-CV-01708, 2022 WL 3647771 (N.D. Ohio Aug. 24, 2022). Instead, the ALJ was "assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citation omitted). Additionally, the ALJ found Dr. Roth's assessment to be inconsistent with other portions of the record, such as Dr. George Lien's ("Dr. Lien") evaluation of Plaintiff's neck and back [Tr. 24 (citations omitted)], which found Plaintiff had "back pain to straight leg raising bilaterally at 45 degrees[;] his motor strength [was] 5/5 in all major muscle groups of the upper and lower extremities" [*Id.* at 404]. Therefore, the ALJ analyzed Dr. Roth's opinion for supportability and consistency. The regulations do not require anything more. *See* 20 C.F.R. § 404.1520c(a), (b)(2).

### 2. Dr. Stephen Goewey

Plaintiff argues that the ALJ failed to consider Dr. Goewey's lift/carry limitation, which precludes light work [Doc. 11 pp. 14–15]. He contends that while Dr. Goewey's opinion was supported by his examination findings and was consistent with the record, the ALJ improperly rejected this opinion and impermissibly substituted his own lay conjecture [*Id.*]. The Commissioner responds that the ALJ found Dr. Goewey's opinion partially persuasive after considering it for supportability and consistency [Doc. 17 pp. 4–5].

Dr. Goewey examined Plaintiff on August 24, 2021 [Tr. 492]. His report "estimated" that Plaintiff can sit unrestricted; stand and walk three to four hours; lift and carry ten to fifteen pounds occasionally; and squat, bend, and kneel on a limited basis [*Id.* at 494]. The ALJ found "Dr. Goewey's report supports standing and walking for three to four hours and limited squatting, bending, and kneeling" but concluded that Dr. Goewey's own examination findings "did not . . . support limiting [Plaintiff] to lifting no more than fifteen pounds" [*Id.* at 25]. He explained that Dr. Goewey's examination report indicated

> extension in the bilateral shoulders and elbows was only slight decreased, and while the claimant had right antalgic gait and braced on furniture at 15% of a full squat and on momentary and place completion of heel-to-toe walk, straight leg raise was negative, and the claimant had full range of motion in the bilateral wrists, hands, fingers, feet, and ankles and 5/5 strength in all four extremities with sensation intact and full deep tendon reflexes (8F).

[*Id.*]. This analysis pertains to the supportability factor and is based directly from Dr. Goewey's examination records, not the ALJ's lay opinion. *Cf. Fowler*, 2022 WL 3648436, at *13 ("An ALJ impermissibly 'plays doctor' where he substitutes his knowledge for that of a physician or medical expert and interprets raw medical data." (citation omitted)). Instead, the ALJ was "assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 F. App'x at 157 (citation omitted). Additionally, ALJ Case also found that Dr. Gowey's lifting limitations were not "consistent with Dr. Lien's treatment notes from his evaluation of claimant's neck and back pain in October 2019" [*Id.*]. This analysis pertains to the consistency factor. Therefore, the ALJ analyzed Dr. Goewey's opinion for supportability and consistency. The regulations do not require anything more. *See* 20 C.F.R. § 404.1520c(a), (b)(2); *see also Mullins v. Sec'y of Health & Hum. Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) ("Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings.").

13

C.  **Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ improperly rejected his statements because the ALJ's recitation of the medical evidence is consistent with Plaintiff's reports of pain and disability; the ALJ failed to mention that Plaintiff had twenty-nine spinal procedures; the ALJ never compared Plaintiff's statements regarding his ability to lift, need to lie down, take breaks, and alternate between sitting, standing, and walking directly to the medical record; and the ALJ improperly weighed Plaintiff's report of daily activities which do not show he is a capable of full-time work [Doc. 11 pp. 16–17]. The Commissioner responds that the ALJ considered Plaintiff's statements and found them inconsistent with the record, noted Plaintiff's surgeries in 2017 and 2018, and while he considered Plaintiff's reported activities, the ALJ did not conclude that they constituted the ability to do full time work [Doc. 17 pp. 7–9].

Courts are to "accord great weight and deference to an ALJ's credibility finding, but such a finding must be supported by substantial evidence." *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (citing *Walters*, 127 F.3d at 531). A plaintiff's complaints are just one of many forms of evidence considered by the ALJ. *See* SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017) ("Other evidence that we will consider includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms . . . ."). "An individual may make statements about the intensity, persistence, and limiting effects of his or her symptoms" either directly to medical sources or the Commissioner. *Id.* The ALJ "will evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id.* The ALJ may also consider plaintiff's ability to perform day-to-day activities in determining plaintiff's credibility and the severity of plaintiff's symptoms based on

14

their consistency with the medical record. *See id.* §§ 404.1529(a), 416.929(a); *Temples*, 515 Fed. App'x at 462 (citing *Walters*, 127 F.3d at 532).

In the discussion following his RFC, the ALJ summarized Plaintiff's subjective complaints, in part, as follows:

> [T]he claimant identified cervical spondylosis, radiculopathy/stenosis, chronic pain, numbness in all extremities, and failed fusion surgery in 2017 as limiting his ability to work (3E/2). He also reported use of a combination of pain medications including opioid analgesic (3E/5). The claimant completed a function report in September 2020, in which he noted history of lumbar spine surgery. He advised he was not able to get out of bed some days. He stated he could not walk long distances, that he needed to elevate his legs to relieve what would otherwise be constant pain, and that he sometimes woke up crying due to pain. He noted he needed help to dress and that his legs became numb when he used the toilet. The claimant also indicated he needed someone to accompany him when he engaged in social activities and that he had difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, remembering, and concentrating (4E). The claimant made generally consistent statements in a second function report that he completed in June 2021 except for additionally reporting difficulty reaching and seeing (7E). At the hearing, the claimant reported chronic use of prescribed oral pain medications including opioid analgesic (Gabapentin and Percocet) including due to burning pain that radiated from his buttocks to his feet. He stated he lay down at least once every two hours and that he had to lie on his side. He also advised he could not stand in one place due to nerve damage in his feet and estimated he could walk for only 15 to 20 minutes.

[Tr. 21]. The ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" [*Id.*]. Later in the opinion, the ALJ noted Plaintiff's reports of his daily activities such as caring for his dog, preparing meals, mowing the lawn with a riding mower, walking, driving, playing the drums, managing his finances, attending church, cleaning the yard, and fishing with his dad [*Id.* at 24]. Yet, he also commented that Plaintiff "endorsed difficulty remembering and concentrating due to pain" [*Id.*].

The ALJ "need not specifically address each piece of evidence to adequately consider the record in its entirety." *Bridges v. Colvin*, No. 3:14-CV-183, 2015 WL 4878653, at *9 (E.D. Tenn. Aug. 10, 2015) (citing *Loral Def. Sys.-Akron v. NLRB.*, 200 F.3d 436, 453 (6th Cir. 1999)). Even so, "[t]he ALJ's decision in this case specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered." *Sparks v. Astrue*, No. 2:11-CV-00074, 2013 WL 1497849, at *10 (M.D. Tenn. Apr. 11, 2013), *report and recommendation adopted sub nom. Sparks v. Colvin*, No. 2:11-CV-00074, 2013 WL 1910642 (M.D. Tenn. May 8, 2013). "The ALJ explained his reasons for discounting Plaintiff's credibility. . . . Therefore, the ALJ's determination must stand." *Id.*

## V. CONCLUSION

For the reasons explained, the Court the Court will **DENY** Plaintiff's statement of errors [**Doc. 11**] and will **AFFIRM** the decision of the Commissioner. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

ENTER:

Jill E. McCook
United States Magistrate Judge